UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BAYCARE HEALTH SYSTEM, INC.,

      Plaintiff,

v.                        CASE No. 8:07-CV-1222-T-27TGW

MEDICAL SAVING INSURANCE
COMPANY, etc.,

      Defendant.

_____

REPORT AND RECOMMENDATION

      The plaintiff hospital system has sued the defendant insurance company for refusing to pay billed charges for healthcare treatment it provided to the defendant's insureds. The defendant has filed a motion to dismiss the plaintiff's five-count complaint, alleging that each claim fails to state a cause of action. The motion was referred to me for a report and recommendation. Because the plaintiff has pled adequately each claim (even the questionable ones), and a dismissal of one or more claims at this point

risks building in a potential reversible error, I recommend that the motion to dismiss be denied.

## I.

The plaintiff, BayCare Health System, Inc. ("BayCare"), is a system of not-for-profit hospitals. The hospitals are licensed in the state of Florida and operate primarily in Hillsborough and Pinellas counties (Doc. 1, ¶¶ 2, 3).[1] The defendant, Medical Savings Insurance Company, sells health insurance plans in the state of Florida (id., ¶9).[2]

Since 2000, the defendant has marketed, and sold, to Florida consumers low premium, high deductible plans commonly known as Health Savings Accounts ("HSA") (id., ¶10). Thus, under the defendant's health plan, the defendant would pay the big medical bills and the consumer would pay for the small health expenses (id., ¶11).

---

[1] The plaintiff hospitals are comprised of three community health alliances: Morton Plant Mease Healthcare, St. Anthony's Healthcare, and St. Joseph's-Baptist Healthcare (Doc. 1, pp. 1-2).

[2] The defendant claims that the insurance provided to Florida residents was group health insurance that is exempt from the provisions of Part VII of Ch. 627, Fla. Stat. (Doc. 1, ¶14). The plaintiff asserts that the defendant is not exempt from the requirements of Ch. 627, Fla. Stat., because it has not complied with the exemption requirements stated in §627.6515, Fla. Stat. (id, ¶15).

When Florida consumers purchased health insurance plans from the defendant, they were issued health insurance certificates which provided that the defendant would pay 100% of "covered expenses" in excess of the insured's deductible if the expenses were incurred at a preferred provider (id., ¶21).[3] The health insurance certificates also contained the caveat that no benefits are payable for hospital charges that exceed "reasonable and customary charges" (id.).

The health insurance certificates define a "reasonable and customary charge" as "the most common charge" that is reasonable for similar professional services, medicines, or supplies within the area in which the charge is incurred (id., ¶23). The "most common charge" is defined as the amount which would equal, or exceed, the amounts charged by two-thirds of the providers within the three digit zip code in which the services or supplies are provided (id.). In addition to these specific criteria, the health insurance certificates included language that, at the defendant's sole discretion, the

---

[3]The term "covered expenses" means expenses actually incurred for (i) services and supplies administered and ordered by a doctor. (ii) services and supplies medically necessary to the diagnosis or treatment of an injury or illness, and (iii) services and supplies not excluded anywhere in the policy (Doc. 1, ¶21).

defendant could consider other unidentified factors in determining a reasonable charge (id.).[4]

From July 1, 1997, until November 30, 2004, the plaintiff was under a contract with the National Preferred Provider Network ("NPPN"). The plaintiff offered a specific discount off of its billed charges to any insurance carrier that contracted with the NPPN to utilize the plaintiff's facilities in exchange for patient volume and/or prompt payment by those insurers (id., ¶27). In 2000, 2001 and the first quarter of 2002, the defendant was one of the insurance carriers that contracted with the NPPN, thereby entitling the defendant to the discount stated in the NPPN contract (id., ¶28).

Pursuant to the NPPN contract, the defendant had agreed that the discounted billed charges would be the exclusive method of calculating the amount the defendant would reimburse the plaintiff for care provided to the defendant's healthcare certificate holders (id.). In 2000 and 2001, the defendant paid all patient accounts at BayCare at the NPPN discounted rate (id., ¶29).

---

[4]The health insurance certificates stated that benefits may be assigned to the hospital providing treatment and that the defendant may pay benefits directly to the hospital provider (Doc. 1, ¶34).

However, according to the plaintiff, beginning in 2002, the defendant, with no advance notice to the plaintiff or its insureds, unilaterally refused to pay at the NPPN discounted rate and instead attempted to pay for healthcare using arbitrary methodologies, including, but not limited to, the Medicare reimbursement rate (id.). Consequently, the plaintiff asserts that the defendant was expelled from the NPPN network (id.).

After the defendant was no longer a member of the NPPN network, the plaintiff remained on the defendant's preferred provider list and the plaintiff continued to treat the defendant's insureds and accept the defendant's insurance (id., ¶¶ 30, 31). The plaintiff asserts that, based on the language of the defendant's health insurance certificates, it and the insureds believed that the defendant would pay 100% of the plaintiff's charges in excess of the insured's deductible if the charges did not exceed the amounts charged for similar services, medicines, or supplies by two-thirds of the providers in the plaintiff's three digit zip code area (id., ¶¶ 24).

When the patients were admitted into the hospital, or shortly thereafter, the plaintiff confirmed with the defendant that the services and supplies provided were covered expenses under the health insurance certificates, i.e., that they were medically necessary to the diagnosis or

-5-

treatment of an injury or illness covered by the defendant's health insurance certificate, and were not excluded under the certificate (id., ¶33). Further, the defendant verified that the patient was insured under the health insurance certificate, that the patient had sufficient insurance benefits available to pay the plaintiff's charges, and the amount of the patient's unexhausted deductible and co-pay, if any (id.). Moreover, the plaintiff confirmed with the defendant that "the services and supplies had been pre-certified, approved, authorized and/or ratified by" the defendant (id.). Additionally, the patients executed an agreement to pay all charges in full for their treatment, regardless of any available insurance (id., ¶32).

The plaintiff, in compliance with the defendant's billing instructions, forwarded to the defendant reasonable and customary charges for healthcare services and supplies provided to the defendant's insureds (id., ¶¶ 35, 44). However, beginning in 2002, the defendant refused to pay, or issued checks to the plaintiff for only a fraction of the billed charges (id., ¶44). Further, each check contained a restrictive endorsement stating that negotiation of the check would constitute full and final payment of all charges (id.). Consequently, the plaintiff refused to accept the checks and demanded payment in full of its billed charges (id., ¶45).

The defendant responded that the plaintiff's billed charges were not reasonable and customary, and that it defined reasonable and customary based upon (a) the Medicare hospital reimbursement rate increased by 26%, (b) its estimation of the plaintiff's costs increased by some percentage, or (c) some undisclosed analysis by a computer software system (id.).

When the plaintiff refused to accept the defendant's underpayment of its billed charges, the defendant told its insureds that the plaintiff had grossly overcharged them, and that the defendant had paid the plaintiff the amount it was entitled to under the health insurance certificates (id., ¶50). The defendant also encouraged its insureds to refuse to pay any amount in excess of what the defendant had offered the plaintiff, and to threaten the plaintiff with legal action for contacting them about paying the bill (id., ¶¶ 51, 52). Moreover, the defendant offered its insureds free legal representation in court proceedings brought by the plaintiff to recover payment of outstanding charges, and to indemnify the patients for a judgment requiring them to pay the plaintiff more for healthcare services than the defendant had offered to pay (id., ¶52).

On July 13, 2007, the plaintiff filed a five-count lawsuit against the defendant arising from the defendant's failure to pay billed charges for

healthcare the plaintiff provided to the defendant's insureds (Doc. 1).  The plaintiff alleges breach of contract, wrongful interference with contract rights, breach of an implied-in-fact contract, breach of implied-in-law contract, and promissory estoppel (id.).  At the time the complaint was filed, forty-nine accounts totaling over one million dollars in charges were in dispute (id.. Ex. G).

The defendant has filed a motion to dismiss all of the plaintiff's claims under Rule 12(b)(6), Fed. R. Civ. P., alleging that each claim is either "legally unsupportable or factually deficient as a matter of law" (Doc. 10, p. 2).  The plaintiff has filed an opposition to the motion, contending that, under liberal pleading standards, each of its five counts states a cognizable claim (Doc. 21).

The motion was referred to me for a report and recommendation (Doc. 26).  Thereafter, I conducted a hearing on the motion (Doc. 29).

## II.

A complaint may be dismissed upon motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted."  Recently, the United States Supreme Court retired the standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of a stricter pleading standard. Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007). Thus, although a complaint does not need detailed factual allegations, a formulaic recitation of the elements of a cause of action will not do. Id. Rather, factual allegations must be enough to raise a right to relief above the speculative level, based on the assumption that the allegations are true (even if doubtful in fact). Id.

The Eleventh Circuit in Watts v. Florida International University, 495 F.3d 1289, 1295-96 (11th Cir. 2007)(citations omitted), summarized the principles established by Twombly as follows:

> The Supreme Court's most recent formulation of the pleading specificity standard is that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. The standard is one of "plausible grounds to infer." The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage" but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."

The Eleventh Circuit made clear that it remains the law that on a Rule 12(b)(6) motion to dismiss the pleadings are construed broadly, and the allegations in the complaint are viewed in the light most favorable to the plaintiff. 495 F.3d at 1295.

### III.

As indicated, the defendant moves to dismiss all five counts of the plaintiff's complaint. Each count is addressed in turn.

#### A. Count I, Breach of Contract

In count I of the complaint, the plaintiff alleges that the defendant breached the terms of the health insurance certificates by refusing to pay 100% of the plaintiff's billed charges in excess of the patient's unexhausted deductible for healthcare treatment it provided to the defendant's insureds (Doc. 1, p. 19). The elements of a breach of contract claim are (1) a valid contract, (2) a material breach. and (3) damages. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999).

The defendant argues that the plaintiff has not pled a breach because the health insurance certificates do not obligate the defendant to pay 100% of the billed charges (Doc. 10, pp. 2-6). Rather, the defendant argues

that the health insurance certificates limit its "payment obligation to a reasonable price for services rendered" (id., p. 2)(emphasis omitted).

The plaintiff alleges that the reasonable and customary charge exclusion in the contract is illusory and void and, therefore, it is entitled to 100% of covered expenses (Doc. 1, ¶¶ 42, 57, 58). However, the plaintiff has also pled that its "charges meet or satisfy the definition of 'reasonable and customary' charges [defined in] the certificate" (id., ¶42; see also id., ¶¶ 36, 37, 44, 59). Moreover, at the hearing on this matter, the plaintiff seemed to acknowledge that it is entitled only to reimbursement of reasonable charges, and it relied upon the contention that its billed charges meet the contract's reasonable and customary standard.

In sum, the plaintiff has pled adequately a breach of contract claim. The claim includes allegations that the defendant failed to pay reasonable and customary charges, which is consistent with the defendant's interpretation of its obligation under the health insurance certificates. The parties' disagreement regarding what constitutes "a reasonable and customary

charge" was not developed in the motion and, in any event, is not appropriately resolved on the motion to dismiss.[5]

The defendant objects that the plaintiff has sought recovery for billed charges "through and including December 31, 2008, or the date counsel for all parties meet together to prepare a pretrial statement" (Doc. 1, ¶31). While this claim seems improper to the extent that it would not permit the defendant to conduct relevant discovery, a motion to dismiss does not seem to be the proper vehicle for a correction of this problem. Furthermore, the plaintiff appears to recognize the problem and suggests that the parties may be able to work the matter out between themselves (see Doc. 2, p. 11).

For the foregoing reasons, I recommend that the motion to dismiss be denied as to count I.

---

[5]The defendant also argues that the provisions of Part VII of Ch. 627, Fla. Stat., are not applicable to the defendant's insurance policies and, therefore, the "allegations at Paragraphs 12-16, 19, 22, 44, and 58 are legally insufficient to state a cause of action" (Doc. 10, p. 9). These paragraphs do not, in themselves, purport to state a cause of action. In fact, except for ¶58, they fall under the heading of "Factual Allegations" (see Doc. 1). Therefore, it appears that the defendant is essentially requesting that these paragraphs be stricken from the complaint.

However, the defendant has not addressed the standard for striking statements from a pleading, Rule 12(f), F. R. Civ. P., and its contention that Part VII of Ch. 627, Fla. Stat., does not apply in this case is not adequately developed. Rather, the argument is primarily comprised of a recitation of findings in another case (Doc. 10, pp. 8-9). Furthermore, the application of Part VII of the Florida Insurance Code does not determine the cognizability of the claim for breach of contract. Therefore, it is not appropriate at this point to strike that information or rule on its applicability.

## B. Count II, Wrongful Interference with Contract Rights

The plaintiff alleges in count II of the complaint that the defendant unjustifiably induced the plaintiff's patients to breach their personal guarantee to pay the plaintiff's billed charges for healthcare treatment (Doc. 1, pp. 20-21, Ex. F). The defendant argues that this count of the complaint fails to state a claim upon which relief can be granted because the plaintiff failed to allege that, absent the defendant's purported interference, the patients would have paid the billed charges (Doc. 10, p. 11). Further, the defendant contends that its alleged interference was justified (id., pp. 11-12).

The elements of a tortious interference claim are (1) the existence of a business relationship, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damage to the plaintiff as a result of the breach of the relationship. Gossard v. Adia Services, 723 So.2d 182, 184 (Fla. 1998).[6]

_____

[6]These elements state a cause of action for tortious interference with a business relationship. Gossard v. Adia Services, supra, 723 So.2d at 184. Tortious interference with contract rights is included within the definition of "tortious interference with a business relationship." Smith v. The Ocean State Bank, 335 So.2d 641, 642 (Fla. App. 1976).

The plaintiff entered into agreements with its patients which personally obligated the patients to pay billed charges for healthcare treatment, notwithstanding any available insurance (Doc. 1, Ex. F). The plaintiff alleges that, after it refused to accept the defendant's underpayment of its billed charges, the defendant induced the patients to breach their agreements by, among other things, falsely telling them that the plaintiff grossly overcharged them, and encouraging them to refuse to pay any additional amount in excess of the payment offered by the defendant (id., ¶¶ 50, 51). In addition, the defendant allegedly urged the patients to threaten the plaintiff with legal action for contacting them about paying the bill, offered the patients free legal representation for court proceedings brought by the plaintiff to recover the outstanding charges, and pledged to indemnify them for a judgment that required the patient to pay more than what the defendant had offered the plaintiff for its services (id., ¶¶ 51, 52). Moreover, the plaintiff alleges that the defendant's conduct was without justification or privilege (id., ¶¶ 50, 66). The complaint therefore alleges the four elements of a tortious interference claim. See Gossard v. Adia Services, supra.

Contrary to the defendant's contention, the plaintiff pled sufficiently that the patients would have fulfilled their contractual obligations

absent the defendant's interference. Thus, the plaintiff's allegations that the defendant's conduct "induc[ed] the Patients to breach their contract," and that the patients refused to honor their contractual obligation "[a]s a result of" the defendant's conduct (Doc. 1, ¶¶ 65, 66) sufficiently plead causation. See Gossard v. ADIA Services, supra, 723 So.2d at 185 n.1; Miami Laundry Co. v. Sanitary Linen Service Co., 131 So.2d 519 (Fla. App. 1961)(a claim for interference with contract rights is stated when it alleges that one induced a breach by a contracting party).

The defendant also argues that the plaintiff has not stated a cognizable interference claim because it "was justified based on its business relationship with the insured patients to tell the insureds that the hospital bills were unreasonable" (Doc. 10, p. 12). It is noted that the plaintiff alleges several wrongful acts beyond "tell[ing] the insureds that the hospital bills were unreasonable" (see Doc. 1, ¶¶ 50-52). Regardless, this contention is not amenable to resolution on a motion to dismiss because it requires examination of evidence outside the four corners of the complaint. See Rule 12(d), F. R. Civ. P.

Under Florida law, a claim for tortious interference with a contract is not cognizable against one who is a party to the contract allegedly

interfered with. <u>Franklin Life Ins. Co.</u> v. <u>Davy</u>, 753 So.2d 581, 587 (Fla.
App. 1999); <u>Ethyl Corp.</u> v. <u>Balter</u>, 386 So.2d 1220, 1224 (Fla. App. 1980).
However, the plaintiff alleges that the defendant interfered with a contract
between the plaintiff and its patients that is distinct from the health insurance
policies (Doc. 1, ¶64, Ex. F  ("Patient Agreement and Consent")).

Therefore, in this circumstance, the issue of whether the
defendant's alleged interference was justified "depends upon a balancing of
the importance ... of the objective advanced by the interference against the
importance of the interest interfered with, considering all circumstances ...
[including] the methods and means used and the relation of the parties...."
<u>Heavener, Ogier Services, Inc.</u> v. <u>R.W. Florida Region, Inc.</u>, 418 So.2d 1074,
1076 (Fla. App. 1982)(<u>citing</u> Restatement 2d, Torts, §767); <u>International
Sales & Service, Inc.</u> v. <u>Austral Insulated Products, Inc.</u>, 262 F.3d 1152, 1159
(11th Cir. 2001).[7]  This balancing of interests is not addressed by the parties

---

[7]The defendant cites to Georgia law for the contention that "all parties to a
comprehensive interwoven set of contracts are not liable for tortious interference with any
of the contracts or business relationships" (Doc. 10, p. 11 (<u>quoting</u> <u>Galardi</u> v. <u>Steele-Inman</u>,
597 S.E.2d 571, 577 (Ga. App. 2004)). However, there is no assertion that Georgia law
governs this action, and the meaning of an "interwoven" set of contracts is unclear.

and, as indicated, is not amenable to resolution on a motion to dismiss because it requires the consideration of evidence outside the pleadings.[8]

In sum, whether the defendant's business relationship with its insureds and its economic interests justify the defendant's alleged interference presents a factual issue that is not appropriately decided on a motion to dismiss. Therefore, I recommend that the defendant's motion to dismiss be denied as to count II.

C. Count III, Breach of An Implied-in-Fact Contract

The plaintiff alleges in count III of the complaint that the defendant breached an implied-in-fact contract (Doc. 1, pp. 21-22). This is a theory that is also known as quantum meruit (see Doc. 10, p. 12).

---

[8]In this connection, the defendant argues that it acted to protect its own economic interest (Doc. 10, p. 12). Actions taken to safeguard or promote the party's own financial interests may be privileged. Horizons Rehabilitation, Inc. v. Health Care and Retirement Corp., 810 So.2d 958, 964 (Fla. App. 2002). However, the defendant has not articulated a financial interest in encouraging the plaintiff's patients to refuse to pay for healthcare services provided to them.

The defendant's citations to Networkip LLC v. Spread Enterprises, Inc., 922 So.2d 355, 358 (Fla. App. 2006) and International Sales & Service, Inc. v. Austral Insulated Products, Inc., supra, 262 F.3d at 1152 are inapposite. In Networkip, the appellant's suspension of its services was justified because it had not received payment for its services. Id. at 357-58. In International Sales & Service, Inc., the interference was justified under a privilege for lawful competition. 262 F.3d at 1159-60. Neither of these justifications appears relevant here.

The plaintiff alleges that it provided healthcare treatment to the defendant's insureds with the defendant's knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that the defendant would pay the reasonable value of that healthcare (see Doc. 1, pp. 21-22). The defendant argues that this claim should be dismissed because the plaintiff has not alleged conduct which evinces its assent to pay the plaintiff's billed charges for healthcare provided to its insureds (Doc. 10, pp. 12-17).

Under Florida law, an implied-in-fact contract "is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or part from the parties' conduct, not solely from their words." Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc., 695 So.2d 383, 385 (Fla. App. 1997). An implied-in-fact contract exists when the parties

> entered into an agreement but without 'sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement ... [in order to give] the effect which the parties ... presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto.'

Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 806 (11th Cir.

1999)(quoting Commerce Partnership 8098 Ltd. Partnership v. Equity

Contracting Co., Inc., supra). Common examples of contracts implied in fact

are where one person performs services at another's request or "where

services are rendered by one person for another without his expressed request,

but with his knowledge, and under circumstances fairly raising the

presumption that the parties understood and intended that compensation was

to be paid." Commerce Partnership 8098 Ltd. Partnership v. Equity

Contracting Co., Inc., supra, 695 So.2d at 386.

The plaintiff alleges that an implied-in-fact contract was formed

when the defendant continued to authorize its insureds to obtain care and

treatment from the plaintiff notwithstanding the defendant's knowledge that

the plaintiff would charge its full non-discounted billed rates for care and

treatment provided after the defendant's expulsion from the NPPN network

in 2002 (Doc. 1, ¶¶ 70-71). Specifically, it is alleged in the complaint (id.,

¶33):

> At or shortly after the Patients were ... admitted,
> BayCare confirmed with Medical Savings: (a) that
> the services and supplies to be provided by
> BayCare were medically necessary to the diagnosis
> or treatment of an injury or illness covered or

insured by Medical Savings' group health
insurance certificate; (b) that the services and
supplies were not excluded by the certificate; ( c)
that the person receiving the services and supplies
was covered or insured under Medical Savings'
certificate; (d) that the person receiving the
services and supplies had sufficient insurance
benefits available to pay BayCare's charges for
them; (e) the amount of the insured person's
unexhausted deductible, if any; (f) the insured's co-
payment amount, if any, and (g) that the services
and supplies had been pre-certified, approved,
authorized and/or ratified by Medical Savings.

The plaintiff alleges further that the parties understood that the purpose of

these communications was to determine whether the defendant would pay the

plaintiff for those services (see id., ¶¶ 38-40). Therefore, construing the

allegations in favor of the plaintiff, it has alleged facts sufficient to state a

claim for breach of an implied-in-fact contract. See Eskra v. Provident Life

& Accident Ins. Co., 125 F.3d 1406, 1413 (11th Cir. 1997)(an implied-in-fact

contract is formed under Florida law when the services were performed under

circumstances fairly raising a presumption that the parties understood, and

intended that, the defendant would pay for those services)(quoting Tipper v.

Great Lakes Chemical Co., 281 So.2d 10, 13 (Fla. 1973)).[9]

---

[9]In Adventist Health System/Sunbelt, Inc. v. Medical Savings Insurance Company,
Case No. 6:03-CV-1121-Orl-19KRS (Order, March 5, 2004)(Doc. 10, Ex. D). Chief
District Judge Patricia C. Fawsett dismissed a claim based on an implied-in-fact contract

The defendant argues that these allegations do not state a claim for breach of an implied-in-fact contract because "the hospital services ...were rendered to the patients, not to their insurance company" (Doc. 10, p. 13). The defendant does not provide any legal authority establishing that it had to be the beneficiary of the hospital services to create an implied-in-fact contract. See Eskra v. Provident Life & Accident Ins. Co., supra, 125 F.3d at 1413.

The defendant also emphasizes that it was the patients, not the defendant itself, who requested care from the plaintiff (Doc. 10, pp. 14-17). However, the defendant need not make a request for services to create an implied-in-fact contract. Thus, a contract implied-in-fact is also stated when the defendant knew that services were being rendered and both sides intended for compensation to be paid. Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc., supra, 695 So.2d at 386.[10]

---

which merely alleged that the plaintiff "followed the appropriate authorization procedures." Id., p. 9. This case is distinguishable because it states far more specific conduct than "followed the appropriate authorization procedures."

[10]Because Florida law does not require that the defendant request the services that are the subject of the claim, the defendant's citation to Cedars Sinai Medical Center v. Mid-West National Life Ins. Co. of Tennessee, 118 F. Supp. 2d 1002 (C.D. Cal. 2000), is inapposite. See id. at 1013 (stating that an element of a quantum meruit claim is that the services "were rendered at defendant's request").

The defendant argues further that the plaintiff has not pled sufficiently an implied-in-fact contract because the defendant's authorizations for patient treatment do "not establish [the defendant's] intent to pay the plaintiff full billed charges irrespective of policy coverages and exclusions" (Doc. 10, p. 14). However, uncertainty regarding the amount of compensation due under an implied-in-fact contract is not a basis to dismiss the claim. See Eskra v. Provident Life & Accident Ins. Co., supra, 125 F.3d at 1413 (where the existence of the implied-in-fact contract is clear, but the terms of compensation are unspecified, a jury is empowered to award a reasonable amount of compensation).

Accordingly, the plaintiff has sufficiently pled a claim for the breach of an implied-in-fact contract. I therefore recommend that the defendant's motion to dismiss be denied as to count III.

### D. Count IV, Implied in Law Contract (Unjust Enrichment)

A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a contract as a matter of law. Tooltrend, Inc. v. CMT Utensili, SRL, supra, 198 F.3d at 805 (applying Florida law). Thus, "[a]lthough the parties may have never by word or deed indicated in any way that there was any agreement between them, the law

will, in essence, 'create' an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." Id.

To prevail under this theory, the plaintiff must prove that (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. Id. Further, the benefit conferred must be a "direct" benefit. Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fl., N.A., 667 So.2d 876, 879 (Fla. App. 1996). The most significant requirement for a recovery on this theory is that the enrichment to the defendant be unjust. Tooltrend, Inc. v. CMT Utensili, SRL, supra, 198 F.3d at 808.

The defendant argues that this count fails to state a cause of action because (1) no direct benefit is conferred on an insurer when the healthcare provider renders healthcare to an insured, and (2) the unjust enrichment claim is duplicative of the breach of contract claim (Doc. 10, pp. 17-18).

The plaintiff contends that the defendant has been unjustly enriched by retaining money that it is obligated to pay the plaintiff for healthcare treatment it provided to the defendant's insureds (Doc. 1, ¶¶ 78, 79). In particular, the plaintiff has pled that, while the parties were members of the NPPN network (through the first quarter of 2002), the plaintiff conferred upon the defendant a benefit in terms of discounted services (Doc. 21, p. 14; Doc. 1, ¶¶ 27-29). Accordingly, if, as the plaintiff alleges, the defendant, during this period, did not pay, or underpaid, for healthcare services, the defendant seemingly would have been unjustly enriched.

The plaintiff alleges further that, by accepting the defendant's health insurance certificates as the primary method of payment for healthcare treatment for the defendant's insureds, the plaintiff assisted the defendant in fulfilling its contractual obligations to its insureds (see Doc. 1, ¶78)(the defendant "was required by its group health insurance certificates/policies to pay benefits to or on behalf of the Patients for care and treatment provided to them by BayCare").

Whether healthcare treatment to insureds constitutes a "direct" benefit to the insurance company, or a benefit at all, is unclear, and is a source of disagreement in courts within the Middle District of Florida. Compare

Adventist Health System/Sunbelt Inc. v. Medical Savings Ins. Co., 6:03-CV-1121-ORL-19KRS (Order, March 5, 2004)(Doc. 10, Ex. D) and All Children's Hospital, Inc. v. Medical Savings Ins. Co., 8:04-CV-186-T-26EAJ (Order, May 12, 2004)(Doc. 10, Ex. E) with Lee Memorial Health System v. Medical Savings Ins. Co., 2:04-CV-445-FTM-33DNF (Order, Sept. 20, 2005)(Doc. 21, Ex. B) and Naples Community Hospital, Inc., et al. v. Medical Savings Ins. Co., 2:04-CV-280-FTM-29SPC (Order, July 30, 2004)(Doc. 21, Ex. C).

In Adventist Health System and All Children's Hospital, Chief District Judge Patricia C. Fawsett and District Judge Richard A. Lazzara, respectively, found that healthcare services do not confer a benefit on the insurer (Doc. 10, Ex. D, p. 12; id., Ex. E, p. 2).[11]  In contrast, District Judge John E. Steele held in Naples Community Hospital, Inc. that the defendant "received a benefit when its policyholders received care and treatment after offering defendant's insurance policy as their primary method of payment" (Doc. 21, Ex. C, p. 10).  In light of this uncertainty, this is an issue that is better resolved after the factual basis of the claims have been developed.

---

[11]In this regard, Chief Judge Fawsett held that a hospital's pre-certification of healthcare insurance coverage "confers nothing on the insurer except a ripe claim for reimbursement, which is hardly a benefit." (Doc. 46, Ex. D, p. 12).

Furthermore, District Judge Virginia M. Hernandez Covington stated in <u>Lee Memorial Health System</u> that the hospital "conferred a benefit upon Medical Savings when it provided care and treatment for the Patients for a discounted fee" (Doc. 21, Ex. B, p. 9); <u>see also</u> <u>Shands Teaching Hospital and Clinics, Inc.</u> v. <u>Beech Street Corp.</u>, 899 So.2d 1222, 1227 (Fla. App. 2005). Thus, a discount which reduces the sum the defendant owes the plaintiff states a direct benefit. Therefore, at a minimum, the plaintiff has stated an unjust enrichment claim for the value of the benefit conferred on the defendant when the plaintiff gave the defendant discount charges for healthcare services and the defendant did not promptly pay those charges.

Notably, in <u>Lee Memorial Health System</u>, the claim of unjust enrichment was sent to the jury and the jury returned a verdict for the plaintiff hospital on the claim (Case Dkt. 2:04-CV-445-FtM-33DNF, Doc. 327). Furthermore, special interrogatories were submitted to the jury, which expressly found that the hospital had conferred a benefit on defendant Medical Savings Insurance Company (<u>id.</u>, Doc. 271, p. 4). Significantly, the unjust enrichment claim in <u>Lee Memorial Health System</u> is very similar to the unjust enrichment claim asserted here. In light of the jury's findings in <u>Lee</u>

Memorial Health System, a dismissal of the unjust enrichment claim at the motion to dismiss stage seems unwarranted.

In addition, the Lee Memorial Health System case is presently on appeal, and the notice of appeal indicates that the unjust enrichment claim may be raised on the appeal. Consequently, while I am somewhat skeptical about this claim, the prudent course would be to await further development of the facts and possibly the law.

The defendant argues, further, that the implied-in-law claim should be dismissed because it is based upon the existence of an express contract and, therefore, it is duplicative of the breach of contract claim (Doc. 10, pp. 20-21). This argument is premature.

Inconsistent and alternative pleading is permitted under the Federal Rules of Civil Procedure. Rule 8(d)(2)(3), F. R. Civ. P. A breach of contract claim and an unjust enrichment claim are alternative claims and, until an express enforceable contract is proven, the equitable claim of unjust enrichment is not barred. Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla. App. 1998); Manicini Enterprises, Inc. v. American Express Co., 236 F.R.D. 695, 699-700 (S.D. Fla. 1996). Therefore, "if for any reason the plaintiff fails in his proof of the express contract, he may have an opportunity

to at least recover the value of the work ... upon an implied contract."

ThunderWave, Inc. v. Carnival Corp., 954 F. Supp. 1562, 1566 (S.D. Fla.

1997)(quoting Hazen v. Cobb-Vaughan Motor Co., 117 So. 853 (Fla. 1928)).

See also Doe v. Univision Television Group, Inc., 717 So.2d 63, 65 (Fla.

App. 1998); Corbin on Contracts, (rev. ed.), vol. 1, §1.20 , p. 65 ("Quasi

contract ... often arises in the context of a true contract.... If the true contract

... is unenforceable, quasi contract is often employed to resolve the rights of

the parties.").

Here, the existence of an express enforceable contract is alleged,

but has not been proven.  Therefore, until it is proven, it is premature to state

that the plaintiff's unjust enrichment claim is duplicative.  See Lee Memorial

Health System v. Medical Savings Ins. Co., (Doc. 21, Ex. B, pp. 12-13);

Naples Community Hospital, Inc., et al. v. Medical Savings Ins. Co., (Doc.

21, Ex. C, p. 15)(rejecting motions to dismiss quasi-contractual claims until

an express contract is proven).

For these reasons, I recommend that the motion to dismiss be

denied as to count IV.

E.  Count V, Promissory Estoppel

The defendant also seeks dismissal of the plaintiff's promissory

estoppel claim (Doc. 10, pp. 21-23). The plaintiff alleges that the defendant

made promises, in the form of conduct and statements in the health insurance

contracts, that the defendant would pay the plaintiff's full billed charges for

healthcare treatment provided to its insureds (Doc. 1, pp. 24-25). The

plaintiff alleges that it relied on those promises to its detriment by providing

healthcare treatment to the defendant's insureds and, therefore, it would be

unjust for the promise not to be enforced (id., p. 25).

A promissory estoppel claim requires the plaintiff to show by

clear and convincing evidence (1) that the plaintiff detrimentally relied upon

a promise made by the defendant, (2) that the defendant reasonably should

have expected the promise to induce reliance in the form of action or

forbearance on the part of the plaintiff or a third person, and (3) that injustice

can be avoided only by enforcement of the promise against the defendant.

W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728

So.2d 297, 302 (Fla. App. 1999).

The defendant argues that the promissory estoppel count should

be dismissed because the complaint does not sufficiently allege an

enforceable promise. In this regard, the defendant specifies that the conduct

-29-

and inaction alleged in complaint subparagraphs 82(a),(g), (h), and (i) are not definite and substantial promises (Doc. 10, p. 22). This argument is conclusory and not well-developed. Regardless, because there are allegations in the promissory estoppel count which the defendant has not argued are too indefinite or insubstantial to qualify as a promise (Doc. 1, ¶¶ 82(b), (c), (d), (e), (f)), dismissal of the claim is not warranted.

The defendant also argues that the plaintiff's reliance on statements from the health insurance certificates (id.) renders the promissory estoppel claim duplicative of the breach of contract claim (Doc. 10, p. 22). However, as discussed above, it is premature to dismiss the plaintiff's promissory estoppel claims at this stage of the litigation. See Doe v. Univision Television Group, Inc., supra, 717 So.2d at 65 (a plaintiff may plead breach of contract and promissory estoppel claims in the alternative); Vencor Hospitals v. Blue Cross Blue Shield of Rhode Island, 169 F.3d 677, 682 n. 14 (11th Cir. 1999)(Because the promissory estoppel claim was merely an alternative avenue of relief, "this issue is not ripe for review until such time as the breach of contract claim is decided"); Williams v. Bear Stearns & Co., supra, 725 So.2d at 400 ("Until an express contract is proven, a motion

to dismiss a claim for promissory estoppel or unjust enrichment on [the ground that an adequate remedy exists at law] is premature").

In sum, the defendant's challenges to the promissory estoppel claim do not warrant its dismissal at this stage of the litigation. I therefore recommend that the defendant's motion to dismiss be denied as to count V.

IV.

In conclusion, taking the allegations stated in the complaint as true, each of the five counts of the complaint states a cognizable claim. I therefore recommend that the defendant's Motion to Dismiss (Doc. 10) be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MARCH _4_, 2008

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).